UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD S. WALSH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:07CV391 JCH |
| ) | |
| ROY MUELLER, et al., ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Edward S. Walsh's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is fully briefed and ready for disposition.

On December 19, 2002, a jury in the Circuit Court of St. Louis County, Missouri, convicted Petitioner of one count of domestic assault in the third degree (Count I), one count of attempted victim tampering (Count III), one count of violating an order of protection (Count IV), and one count of harassment (Count V). Petitioner was sentenced to one year imprisonment on Count I, seven years on Count III, one year on Count IV, and one year on Count V, with the sentences on Counts I, III and IV to run consecutively, and the sentence on Count V to run concurrently. Petitioner's convictions and sentence were affirmed on appeal. State v. Walsh, 122 S.W.3d 716 (Mo. App. 2003). Petitioner thereafter filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied after an evidentiary hearing. (Resp. Exhs. G, H). The Missouri Court of Appeals affirmed the denial of Petitioner's post-conviction motion. Walsh v. State, 211 S.W.3d 627 (Mo. App. 2007).

Petitioner is currently residing in the St. Louis Honor Center in St. Louis, Missouri. As the Court construes the instant petition for writ of habeas corpus, Petitioner raises the following claim for relief: That Petitioner received ineffective assistance of counsel, in that trial counsel failed to raise the defense to victim tampering provided in Mo. Stat. § 455.085.9, whereby, "[g]ood faith attempts to effect a reconciliation of a marriage shall not be deemed tampering with a witness or victim tampering under section 575.270 RSMo."[1]

## DISCUSSION

As stated above, in his petition Petitioner claims he received ineffective assistance of counsel, in that trial counsel failed to raise the defense to victim tampering provided in Mo. Stat. § 455.085.9, whereby, "[g]ood faith attempts to effect a reconciliation of a marriage shall not be deemed tampering with a witness or victim tampering under section 575.270 RSMo." Petitioner raised this claim in his Rule 29.15 motion for post-conviction relief, and the motion court denied the claim as follows:

> Specifically, [Petitioner] alleges that had trial counsel fashioned a defense using [Section 455.085.9] to explain [Petitioner's] purpose in writing the letters that there is a reasonable probability that the outcome of the proceeding would have been different.
>
> A review of the testimony elicited at trial and at the evidentiary hearing demonstrates trial counsel employed reasonable trial strategy.
>
> During the trial, Karen Walsh, the victim of the charged crimes testified. (See Transcript On Appeal, Volume I of I, hereinafter, "Tr." 172-347.) She testified as to the assaults perpetrated by [Petitioner] on the dates of June 1 and June 3, 2002. Tr. 185-220.
>
> Concerning the charge of victim tampering, Karen Walsh read into evidence two letters [Petitioner] wrote to her from jail. Tr. 244-254. These letters were written after charges had been filed against the [Petitioner] and prior to his preliminary hearing. Tr. 251. The first letter was dated June 22, 2002 and is

---

[1] To the extent Petitioner attempts to raise other claims in his § 2254 petition, they are procedurally barred, as he raised them in neither his Rule 29.15 motion for post-conviction relief, nor his appeal of the denial of that motion.

addressed to Karen's dogs. Tr. 249. This letter tells the dogs to tell their mom, Karen, that one of the attorneys is gathering information against their mom. Tr. 249. The letter goes on to state that the purpose is to "paint your mom in a bad light, seven crimes...will be brought out in the open." Tr. 249. The letter goes on to state; "If your mom was smart, she would stop the insanity before this Thursday (referring to the preliminary hearing date) and dismiss both the assault charge and the violation of the restraining order." Tr. 250. The letter also indicates that if the matter goes past Thursday, everybody will be in trouble and wish this never happened. Tr. 251.

The second letter was sent by [Petitioner] on June 25, 2002 and was addressed to Karen. Tr. 253. This letter again talks about impeaching her credibility if things proceed. [Petitioner] writes, "[f]rom what I gather from the attorney is they will take after someone's past and credibility, past records, lying, stealing, etc..." Tr. 254.

[Petitioner] also testified at trial. Tr. 457-645. [Petitioner] testified at trial concerning the assault charges. [Petitioner] denied hitting Karen or doing anything with the intention of hurting her. Tr. 540-541. [Petitioner] attributed Karen's injuries to her inebriated condition (Tr. 475) and a fall that occurred on June 1, 2002. Tr. 514-521. [Petitioner] denied that anything happened on Monday, June 3, 2002. Tr. 533-535.

[Petitioner] testified at trial as to the purpose of the letters. Tr. 548-550. He testified that at the time of writing the letters he was "paralleling" a situation that happened two years ago when Karen had him arrested on an unjustified charge and he thought the same thing was happening again. Tr. 549-550. Trial counsel asked [Petitioner] why he mentioned in his letters to Karen to drop the charges. Tr. 550. [Petitioner] stated: "Like I said in one of those phone calls, I did say, you know, 'Drop the bullshit lies,' whatever I said, and that's what I was alluding to, the story you came up with, drop the story and drop these charges, this is ridiculous, is what I was thinking." Tr. 550. [Petitioner] further testified that he was trying to get Karen to tell the truth. Tr. 550-551.

In [Petitioner's] counsel's closing argument as to why [Petitioner] should be found not guilty of victim tampering she stated:

> Victim tampering, no. He was trying to get her to tell the truth. He was not trying to get her to drop valid felony charges against him; he was trying to tell the truth. "Stop this bullshit lie." That's not trying to dissuade her from assisting the prosecutor in prosecuting him. That's simply saying, stop the insanity, you know you're lying, stop it.

Tr. 715-716.

At the evidentiary hearing [Petitioner] testified that he did not discuss a defense strategy with his counsel as to the victim tampering charge. [Petitioner] also

- 3 -

testified that not only did he write the letters to his wife to get her to tell the truth but for other purposes as well. He would have testified at trial that he wrote the letters to reconcile with his wife if he had known it was relevant to his defense. He also claimed the reason he did not testify at trial that one of the purposes for writing to his wife was to get back together with her, was because he thought the letters clearly expressed those sentiments about love and coming home. He further stated that he had not heard of Section 455.085.9 RSMo. and his counsel did not discuss it with him.

[Petitioner] also called Judith Offermann, his trial counsel, to testify at the evidentiary hearing. She testified that she had been an attorney for eleven and half years. She further testified that she was familiar with Section 455.085.9 RSMo. She stated that she had read the letters [Petitioner] sent to Karen Walsh. In her opinion, the contents of the letters did not reflect an attempt on the part of [Petitioner] to patch up their marriage and were threatening. Further, during her preparation meetings with [Petitioner], he never told her he wanted to get back together with Karen. In fact, she had to make sure he suppressed his anger toward Karen when he testified.

Ms. Offermann testified that she discussed trial strategy with [Petitioner]. The strategy that she and [Petitioner] discussed and used was that Karen had set him up, made up the charges. This strategy was based on what [Petitioner] told her about the case. It was decided that if they then later argued to the jury that he wrote the letters to express that he wanted to be back together with Karen, the jury would not have believed [Petitioner] and he would lose credibility. She testified that she didn't feel the jury would have believed [Petitioner], if after all the horrible things Karen did to him, bring the false charges, that he now would express a desire to be back with her. Ms. Offermann testified, that ultimately it was decided not to utilize Section 455.085.9 RSMo. as a defense because it would be inconsistent with their chosen trial strategy, that the charges were baseless and false and that [Petitioner] wrote the letters to Karen to get her to tell the truth.

This Court had an opportunity to observe Ms. Offermann's conduct during the trial of this cause. Further, this Court also considered her testimony at the evidentiary hearing. The court finds her testimony credible. It is abundantly clear, that counsel in consultation with [Petitioner] undertook a defense that would put [Petitioner] in the best position to be found not guilty on all the counts for which he was charged. Ms. Offermann made a deliberate and conscious choice to present a defense that would show that the charges brought by Karen Walsh were false and baseless. In order to put forth that defense, a reasonable decision was made to not present the letters as [Petitioner's] attempt to reconcile his marriage but that [Petitioner] wrote the letters to urge Karen to tell the truth. Presenting the letters in this manner, counsel felt would also be consistent with the overall defense strategy that the assault charges were baseless. Counsel also reasoned, that presenting the letters as a good faith attempt to effect a reconciliation of their marriage would undermine a consistent

trial strategy and further would destroy any credibility [Petitioner] would have with the jury.

Further, the court finds that Ms. Offermann's argument and [Petitioner's] testimony that the purpose he wrote the letters was to get Karen to tell the truth was reasonable trial strategy to defend the victim tampering charge. A person commits the crime of victim tampering when he <u>purposely</u> prevents or dissuades the victim of a crime from assisting in the prosecution. (emphasis added) MAI-CR3d 329.87. [Petitioner's] testimony and counsel's argument was that the [Petitioner] did not act purposely to prevent or dissuade Karen from assisting in the prosecution. [Petitioner's] purpose in writing the letters was to try to get her to tell the truth and stop lying about the assault charges. Therefore, the jury should find him not guilty because the State could not meet its burden of proof.

The court also has considered the testimony of [Petitioner] at trial and at the evidentiary hearing. The court finds [Petitioner's] testimony at trial and at the evidentiary hearing to be contradictory. The court finds [Petitioner's] explanation at the evidentiary hearing as to the purpose for which he wrote the letters to Karen, contradicts the testimony he gave at trial. The court finds [Petitioner's] testimony at the evidentiary hearing not credible.

After considering all the evidence, this Court concludes that Ms. Offermann exercised reasonable trial strategy. Therefore, [Petitioner] fails to establish the performance prong of the <u>Strickland</u> test. Reasonable trial strategy cannot be ineffective assistance of counsel. <u>Middleton v. State</u>, 80 S.W.3d 799, 804 (Mo. 2002). Courts should defer to trial counsel and not second-guess with the benefit of hindsight. <u>Middleton</u>, 80 S.W.3d at 804.

Furthermore, [Petitioner] has not satisfied the second prong of <u>Strickland</u> because he has failed to demonstrate that he suffered any prejudice as a result of trial counsel's performance. <u>State v. Kidd</u>, 75 S.W.3d 804 (Mo. App. 2002).

To prevail on a claim of ineffective assistance of counsel, a [Petitioner] must show (1) that the [Petitioner's] attorney failed to exercise the level of skill and diligence that a reasonably competent attorney would in a similar situation, and (2) that the [Petitioner] was prejudiced by that failure. <u>Strickland v. Washington</u>, 104 S.Ct. 2052, 2064 (1984). [Petitioner] must meet both prongs of the test. If [Petitioner] fails to satisfy one of the prongs, then the court need not consider the other. <u>State v. Whitfield</u>, 939 S.W.2d 361, 369 (Mo. banc 1997). [Petitioner] must overcome the presumption that counsel is competent and the challenged action was sound trial strategy. <u>State v. Young</u>, 844 S.W.2d 541, 545 (Mo. App. 1992). In order to show prejudice [Petitioner] must show that there is a reasonabl[e] probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Kidd</u>, 75 S.W.3d at 809. The burden is upon the [Petitioner] to prove counsel's ineffectiveness by a preponderance of the evidence. <u>Myszka v. State</u>, 16 S.W.3d 652, 657 (Mo. App. 2000).

(Resp. Exh. G, PP. 41-49). Petitioner advanced the claim on appeal of the denial of his 29.15 motion, and the Missouri Court of Appeals denied the claim as follows:

> To prevail on a claim of ineffective assistance of counsel, [Petitioner] must prove that his counsel did not conform to the customary skill and diligence of a reasonably competent attorney under the same or similar circumstances, and counsel's deficient performance resulted in prejudice to [Petitioner]. Strickland v. Washington, 466 U.S. 668, 686-88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). [Petitioner] must show that counsel's performance failed to meet an objective standard of reasonableness in order to establish ineffectiveness. Storey, 175 S.W.3d at 125; (quoting Williams v. Taylor, 529 U.S. 362, 390-91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). There is a strong presumption that counsel did provide competent representation, and this presumption can only be overcome by a showing that the representation did not meet the objective standard of reasonableness. Worthington v. State, 166 S.W.3d 566, 573 (Mo. banc 2005) (citations omitted).
>
> [Petitioner's] claim centers on counsel's choice not to pursue the potential defense of reconciliation, set out in section 455.085.9. That provision states, "[g]ood faith attempts to effect a reconciliation of a marriage shall not be deemed tampering with a witness or victim tampering under section 575.270, RSMo." [Petitioner] sent two letters to wife after charges were filed against him telling her to drop the charges. The first letter was addressed to wife's two dogs, and mentioned that information was being gathered against the dogs' "mom," and that certain crimes could be "brought out in the open." The letter stated the wife should dismiss the assault charge if she "were smart." In the letter, [Petitioner] said if the proceedings continued past the preliminary hearing, everyone would be "in trouble and wish this never happened." [Petitioner's] letter also said he missed the dogs and their "mom" too, and he loved her. The second letter discussed the potential impeachment of wife's credibility if the charges proceeded to trial. In his second letter, [Petitioner] again told wife he missed her and loved her and wanted to be with her again, where he belonged.
>
> At trial, [Petitioner] testified that the purpose of the letters was to try to get wife to tell the truth. He did not testify about his desire to reconcile the marriage. At the evidentiary hearing on his motion for post-conviction relief, [Petitioner] stated that he did not testify about his wish to reconcile his marriage because he believed the letters were "obvious" as to his love for wife and his desire to go home.
>
> [Petitioner's] trial counsel also testified at the evidentiary hearing. She stated that the defense to the attempted victim tampering charges was that [Petitioner] was trying to get wife to tell the truth, not trying to attempt to dissuade her from pursuing her complaint. Counsel testified that she believed if she presented the defense that [Petitioner] was attempting to reconcile his marriage, she would lose credibility with the jury because [Petitioner's] contention was that the assault did not happen. Counsel stated that she thought if [Petitioner] asserted a defense that the claims made by wife concerning the assault were false and then said he wanted to get back together

with wife, the jury would not have believed him. According to counsel, [Petitioner] would lose credibility with the jury if they argued that wife did these "horrible" things such as falsely accusing him of assault and then he claimed he was attempt[ing] to reconcile his marriage. The reconciliation defense was simply inconsistent with the defense that the accusations were false.

"Provided the decision is reasonable, a deliberate and informed choice to pursue one defense over another is a matter of trial strategy that cannot form the basis of a claim of ineffective assistance of counsel." Francis v. State, 183 S.W.3d 288, 300 (Mo. App. 2005); (citing Henderson v. State, 111 S.W.3d 537, 540 (Mo. App. 2003)).

The motion court found that the testimony of trial counsel was credible, and counsel decided to pursue a defense which would place [Petitioner] in the best position to be found not guilty on all counts. Counsel's decision was to present a defense that the claims brought by the victim were false. The motion court found that in presenting that defense, counsel made a reasonable decision not to present the letters. These findings were supported by the record. Counsel made a deliberate and informed choice to pursue the defense that the accusations made by wife were false, and in her opinion, a defense of reconciliation was inconsistent with such a defense. The choice to pursue the defense that the accusations were false and [Petitioner] was merely trying to get wife to tell the truth with the letters he sent instead of dissuade her from prosecuting was reasonable. Thus, [Petitioner] was not denied effective assistance of counsel, and the trial court did not clearly err in denying his request for post-conviction relief. Point denied.

(Resp. Exh. K, PP. 4-6).

With respect to federal court review of state court conclusions, 28 U.S.C. §2254 states in pertinent part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 (d).

Upon consideration, this Court finds the decision of the Missouri courts is entitled to deference. In order to prevail on his ineffective assistance of counsel claim, Petitioner must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, Petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Upon consideration, the Court finds Petitioner fails to satisfy the first prong of the Strickland test, i.e., that his trial counsel's performance was deficient. Specifically, the Court notes Petitioner's attorney testified during the evidentiary hearing that while she was aware of Mo. Stat. § 455.085.9, she decided against utilizing it as a defense, because it was inconsistent with their theory that the assaults never occurred in the first place. (Resp. Exh. H, PP. 78-82). Counsel's decision not to pursue the defense to victim tampering thus constituted a matter of trial strategy. The Court therefore holds trial counsel's actions were not objectively unreasonable, but rather fell within the

wide range of professionally competent assistance sanctioned by Strickland, 466 U.S. at 690. Petitioner's request for habeas relief on this ground must therefore be denied.[2]

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1) is **DENIED**, and his claim is **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998).

Dated this 7th day of August, 2007.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[2] In light of the Court's ruling that trial counsel's performance was not deficient, it need not consider whether Petitioner suffered prejudice.